UNITED STATES, Appellee,

v.

Ansley GLAZE, Private, U. S.
Army, Appellant.

No. 38,119.
SPCM 13965.

U. S. Court of Military Appeals.

June 15, 1981.

For Appellant: *Major Elliot J. Clark, Jr.*
(argued); *Colonel Edward S. Adamkewicz,
Jr., Lieutenant Colonel John F. Lymburner*
(on brief); *Captain Jan W. Serene.*

For Appellee: *Captain Paul K. Cascio*
.(argued); *Colonel R. R. Boller, Major Ted
B. Borek, Captain Rexford T. Bragaw, III*
(on brief); *Major David McNeill, Jr., Cap-
tain Stephen D. Smith.*

## OPINION OF THE COURT

COOK, Judge:

In accordance with his pleas, the appel-
lant was convicted by a special court-mar-
tial of numerous violations of the Uniform
Code of Military Justice. We granted re-
view to consider whether appellant's plea of
guilty to one of the offenses, resisting ap-
prehension, was improvident. C.M.A., 8
M.J. 177 (1979).

During the inquiry into accused's under-
standing of the meaning and legal effect of
a plea of guilty, the trial judge reviewed
the elements of the apprehension offense
and then inquired, "What's the Govern-
ment's theory as to how the resistance was
accomplished?" Trial counsel explained
that Acting Sergeant Balas, a military po-
liceman, had sought to check accused's pass
but accused could not produce one. He was
requested by the sergeant to accompany
him "either to KNP [Korean National Po-
lice] box or to the S–5 box in TDC [Tongdu-
chon] so they could verify his legal absence
from his installation." Glaze acceded to the
request, but when they had walked about
100 meters, he broke away. He was chased
by Sergeant Balas and Captain Denny, then
serving on uniformed military police patrol.
They caught the accused; he struggled to
free himself but was subdued.

The accused later described the events as follows:

I was stopped and asked for a pass and ID check. I didn't have my pass on me at the time. So I just showed them my ID card, so they were attempting to escort me to the KNP box. And I started running, you know, and so they caught up with me, and I put up a little struggle with them. And so they carried me to the KNP box.

The judge indicated that, instead of resisting apprehension, the accused might actually be guilty of seeking to escape from custody after the apprehension was complete.[1] After some additional discussion of the matter, defense counsel requested a recess "to talk to the accused." The recess was granted, with the judge exhorting counsel to "critically analyze whether or not an apprehension was effected by Balas and give me your opinion when we resume the trial." On resumption of the proceedings, defense counsel presented to the judge a rationale for upholding the lawfulness of the apprehension.[2] He suggested that, when accused had not been able to produce his pass, he

was not [then] apprehended, but basically the military police and the captain froze the situation, kind of like—I suppose you could almost look at it like a *Terry*[3] situation—basically froze the situation to check into his status as far as his authorization pass-wise. He was not apprehended at that time. He was asked to accompany them to the KNP box. He was moving along. After a period of a few seconds, he decides, "Hey, I'm not going to go along any further," and he he starts—he just stops. Balas grabs his arm, trying to encourage him to accompany him, at which time he breaks away

and starts running. Balas did in fact yell to him "Stop," at that time, and words to that effect. He fled the scene. Captain Denny chased him; Balas chased him.

At that point in time, the defense would look at the situation and suggest that they did—the two individuals had authority at that time to apprehend him for the misconduct of violating their order to go to KNP box, which we feel is a lawful order, and violating the order to stop and to preclude the fleeing situation.

Upon further questioning by the judge, the accused gave answers consistent with the theory offered by his counsel—although not completely consistent with the answers he had given the judge before the recess. Satisfied with the answers, the judge accepted the plea of guilty.

We are unwilling to base the lawfulness of the apprehension on the accused's failure to accept fully the "[i]nvitation" of the military policeman to accompany him to the KNP box. Instead, the disobedience of the order to halt when Glaze took flight is the misconduct which gave legitimacy to the apprehension.

■ Law enforcement authorities can properly take reasonable measures to assure that, until reasonable investigative steps can be completed, evidence is not destroyed, crime scenes are not disarranged, and suspects do not flee. *Cf. Rawlings v. Kentucky*, 448 U.S. 98, 110 n. 5, 100 S.Ct. 2556, 2564 n. 5, 65 L.Ed.2d 633, 645 n. 5 (1980); Dutile, *Freezing the Status Quo in Criminal Investigations: The Melting of Probable Cause and Warrant Requirements*, 21 B.C. L.Rev. 851 (1980). In the military community, orders may be used for such purposes. Here, Acting Sergeant Balas, a military po-

---

1. According to paragraph 174*a*, Manual for Courts-Martial, United States, 1969 (Revised edition), "attempts to escape from custody after the apprehension is complete, will not constitute the offense of resisting apprehension although they may constitute other offenses."

2. It may reasonably be inferred that, having obtained a favorable pretrial agreement, defense counsel desired to allay the judge's doubts about acceptance of the guilty pleas, and, thereby, avoid placing the agreement in jeopardy.

3. *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

liceman, had a reasonable and articulable basis upon which to believe that accused was off post without authority. In these circumstances, he was entitled to detain the accused for the brief period incident to a telephonic check on his status. The order to halt was an appropriate—and lawful—means to accomplish this end. Violation of that lawful order authorized the ensuing apprehension. Accordingly, the plea of guilty was provident.

The decision of the United States Army Court of Military Review is affirmed.

Chief Judge EVERETT and Judge FLETCHER concur.