UNITED STATES, Appellee,

v.

Manuel A. GARCIA-LOPEZ, Specialist Four, U.S. Army, Appellant.

No. 43,453.

CM 441481.

U.S. Court of Military Appeals.

Aug. 29, 1983.

For Appellant: *Captain Claudio F. Gnocchi* (argued); *Colonel William G. Eckhardt, Lieutenant Colonel R. Rex Brookshire, II, Major Patrick F. Crow* (on brief); *Major Raymond C. Ruppert, Major James F. Nagle.*

For Appellee: *Captain Edmond R. McCarthy, Jr.* (argued); *Colonel R.R. Boller, Lieutenant Colonel John T. Edwards,*

*Captain Glenn D. Gillett, Captain Mark S. Julius* (on brief); *Colonel James Kucera, Captain Michael R. Smythers.*

*Opinion of the Court*

EVERETT, Chief Judge:

Pursuant to his guilty pleas, appellant was convicted by a military judge sitting as a general court-martial on charges that he had carried a concealed weapon, resisted apprehension, escaped from custody, and wrongfully possessed and introduced into a military installation 180.98 grams of hashish, in violation of Articles 92, 95, and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 892, 895, and 934, respectively. The sentence extended to a dishonorable discharge, 3 years' confinement, total forfeitures, and reduction to the lowest enlisted grade; but, pursuant to a pretrial agreement, the convening authority reduced the confinement to 27 months, but otherwise approved the sentence. The Court of Military Review affirmed the findings and sentence as approved by the convening authority.

We granted review on this issue:

> WHETHER THE APPELLANT'S PLEA OF GUILTY TO ESCAPE FROM LAWFUL CUSTODY WAS IMPROVIDENT BECAUSE IT WAS NEVER ESTABLISHED THAT THE APPELLANT WAS PLACED UNDER LAWFUL CUSTODY.

The question must be answered in the affirmative.

I

During the providence inquiry, the military judge explained that the elements of the escape-from-custody charge under Article 95 were that appellant "had reason to believe that" the officers who apprehended him "were empowered to hold ... [him] in custody and that" he "freed himself from the restraint of this custody before" being "released ... by proper authority." Garcia-Lopez acknowledged that these elements existed in his case. However, when *asked to* describe in his own words the events that gave rise to this charge and that of resisting apprehension, he stated:

> I be in my room and I hear somebody touch the door and they open the door and when they come in, I said, "come on in." They told me that this is a search. I said, "okay, come on in." They came in, two people come in and I run outside and when I running outside, running by Bravo Battery, two people grabbed me. They apprehend me outside of the kaserne and they found on me a knife and the pieces [of hashish].

Upon further inquiry by the judge, appellant acknowledged that "when the lieutenant and the two sergeants came into ... [his] room," they had "direct[ed] ... [him] to stay in the room" and he had known that he was "to stay there." Moreover, he had felt that his "freedom of movement had been impaired"; but nonetheless he had run. After being chased, he was caught; and, after a struggle, he was subdued and searched.

A stipulation of fact, which became prosecution exhibit 1, gave this recital of the relevant events:

> That on 29 May 1981, Colonel William Good, Deputy Commander, Baumholder Military Community, properly authorized a search of the person and room of Specialist Four Manuel A. Garcia-Lopez, United States Army, Battery A, 2d Battalion, 81st Field Artillery; That First Lieutenant Robert A. Tinsley, Command Sergeant Major Henry K. Ellis and First Sergeant James Walker went to SP4 Garcia-Lopez' room, Room 229, Building 9002, Strassburg Kaserne, Idar-Oberstein, Federal Republic of Germany; That 1LT Tinsley knocked on the door and that SP4 Garcia said "Come in"; That 1LT Tinsley, CSM Ellis and 1SG Walker entered; That 1LT Tinsley informed SP4 Garcia of the search authorization and directed him to stay in the room; That 1LT Tinsley is a commissioned officer of the United States Army authorized to apprehend SP4 Garcia-Lopez;
>
> That SP4 Garcia-Lopez walked towards a trash can located near the door; That SP4 Garcia-Lopez put a can in the trash and ran out; That 1SG Walker told him

to stop but that he continued running; That 1SG Walker chased after him, shouting for him to stop, as he ran down the hallway, down the stairs and out of the building; That two members of a guard detail joined the chase as SP4 Garcia-Lopez ran down the street and down a hill behind the buildings; That he and the guards jumped over a fence and dropped ten feet into a yard; That SP4 Garcia-Lopez hit his head when he fell but that he got up and continued running away; That one guard caught up with and tackled him as they crossed a street; ...

*   *   *   *   *   *

That at the time of his original apprehension SP4 Garcia-Lopez had three plastic baggies containing one hundred forty six (146) individually wrapped pieces of marijuana in the hashish form; That the hashish weighed 180.98 grams.

## II

"Custody," within the meaning of Article 95 of the Code, "is that restraint of free locomotion which is imposed by lawful apprehension." *See* para. 174*d,* Manual for Courts-Martial, United States, 1969 (Revised edition). "Apprehension" is defined by Article 7(a) of the Code, 10 U.S.C. § 807(a), as "the taking of a person into custody," and it is based "upon reasonable belief that an offense has been committed and that the person apprehended committed it." Art. 7(b).

Of course, there can be restraint of personal freedom which constitutes a seizure of the person for purposes of the Fourth Amendment, but which falls short of apprehension. *See Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Thus, in *Michigan v. Summers,* 452 U.S. 692, 101 S.Ct. 2587, 69 L.Ed.2d 340 (1981), the Supreme Court upheld the seizure of a person and his temporary detention pending a search of his premises, although he was arrested only after this search. *Cf. Rawlings v. Kentucky,* 448 U.S. 98, 100 S.Ct. 2556, 65 L.Ed.2d 633 (1980). The Court concluded that such a limited intrusion on the defendant's security and freedom was reasonable under the circumstances.

There is no doubt that the order to appellant to remain in his room while it was being searched was a lawful order. In *United States v. Glaze,* 11 M.J. 176, 177 (C.M.A.1981), we recognized that

> [l]aw enforcement authorities can properly take reasonable measures to assure that, until reasonable investigative steps can be completed, evidence is not destroyed, crime scenes are not disarranged, and suspects do not flee. *Cf. Rawlings v. Kentucky,* 448 U.S. 98, 110 n. 5, 100 S.Ct. 2556, 2564 n. 5, 65 L.Ed.2d 633, 645 n. 5 (1980); Dutile, *Freezing the Status Quo in Criminal Investigations: The Melting of Probable Cause and Warrant Requirements,* 21 B.C.L.Rev. 851 (1980). In the military community, orders may be used for such purposes.

*Cf. United States v. Schneider,* 14 M.J. 189 (C.M.A.1982). However, that order did not transform the limited nature of this intrusion into "custody." The fact that appellant's freedom of movement had been impaired, which he acknowledged in his providence inquiry, is of no moment in determining the legal nature of that impairment. See *Michigan v. Summers, supra.*

From our reading of the providence inquiry and the stipulation, it appears clear that, at the time he fled from the room, appellant was not in custody within the meaning of Article 95. There is no indication that an apprehension had been "effected by clearly notifying the person to be apprehended that he is thereby taken into custody." *See* para. 19*c,* Manual, *supra.* Nor do the surrounding circumstances support a conclusion that appellant had been apprehended prior to his flight. *See United States v. Kinane,* 1 M.J. 309, 314 (C.M.A. 1976). *See also United States v. Sanford,* 12 M.J. 170 (C.M.A.1981). Instead, appellant simply was being temporarily detained in connection with a search of his room and of his person.

Although persons often are searched incident to apprehension, there is no invariable requirement that someone be apprehended

before he may be searched. *See Michigan v. Summers, supra.* Therefore, the statement in the stipulation that authority had been obtained to search appellant and his room is not equivalent to saying that authority had been obtained to apprehend appellant, or even that there was an intention to apprehend him. Similarly, even though one of the officers performing the search was authorized to apprehend, that is not equivalent to saying either that the officer intended to apprehend or that an apprehension took place. To adopt the Government's position in this case would be to encourage the apprehension of a suspect when this was unnecessary for investigative purposes; and certainly nothing in the Code intends such a result.

Since the providence inquiry and the stipulation do not sustain the plea of guilty—and indeed are contrary to that plea, *see* Article 45, UCMJ, 10 U.S.C. § 845—the plea of guilty to escape from custody and the finding based thereon must be set aside.

III

Appellant was convicted of introducing hashish into a military installation and, in a separate specification, of possessing this same hashish on the same date and on the same installation. Under such circumstances the introduction includes the possession; accordingly, the finding of guilty of possession should be set aside and the specification dismissed. *United States v. Miles,* 15 M.J. 431 (C.M.A.1983); *United States v. Roman-Luciano,* 13 M.J. 490 (C.M.A.1982).

IV

The decision of the United States Army Court of Military Review is reversed as to specification 2 of Charge II, specification 1 of Charge III, and the sentence. The findings of guilty of those specifications are set aside and the specifications are dismissed. The record of trial is returned to the Judge Advocate General of the Army for remand to the Court of Military Review for reassessment of the sentence based on the remaining findings of guilty.

Judge FLETCHER concurs.

COOK, Judge (dissenting):

The problem here, as is so often true, is the way the case lies before us. Since the accused pleaded guilty, the "evidence" must be taken from his responses during the providence inquiry. Naturally, this is far from that evidence produced in a contested case. We cannot make "reasonable doubt" judgments as to the merits of the evidence. The test we must apply is whether the responses of the accused "make clear the basis for a determination by the military ... judge ... whether the acts or the omissions of the accused constitute the offense or offenses to which he is pleading guilty," *United States v. Care,* 18 U.S.C. M.A. 535, 541, 40 C.M.R. 247, 253 (1969), and that the accused did not set up matters "inconsistent with the plea" or make it appear "that he had entered the plea ... improvidently or through lack of understanding of its meaning and effect." Article 45(a), Uniform Code of Military Justice, 10 U.S.C. § 845(a); *United States v. Pretlow,* 13 M.J. 85 (C.M.A.1982). As we said in *Pretlow:*

> Stated another way, "a guilty plea [must] be in accordance with actual facts," *United States v. Davenport,* 9 M.J. 364, 367 (C.M.A.1980), and the "inquiry must be made to ascertain if an accused is convinced of his own guilt." *United States v. Moglia,* 3 M.J. 216, 218 (C.M.A. 1977); *United States v. Johnson,* 1 M.J. 36 (C.M.A.1975).

*Id.* at 87 n. 4.

In the case at bar, the accused had negotiated a pretrial agreement limiting the punishment he might receive in return for his pleas of guilty and a stipulation to the facts surrounding the charges and specifications. During the providence inquiry, the following colloquy developed:

> MJ: ... Now with regard to Specification 1 of Charge II, the elements are that, at Strassburg Kaserne, Idar-Oberstein, on or about the 29th of May, Lieutenant

Robert L. Tinsley and other members of the Army acting under his orders attempted to apprehend you. That, at that time, Lieutenant Tinsley and those with him were persons authorized to apprehend you. That, you had reason to believe that they had that power and that, you actively resisted that apprehension.

ACC: Yes, sir.

MJ: With regard to Specification 2 of Charge II, that at Strassburg Kaserne, Idar-Oberstein, on or about the 29th of May 1981 you had been apprehended by someone with the authority to do so, that is Lieutenant ... Tinsley along with Command Sergeant Major ... Ellis and First Sergeant ... Walker.

* * * * * *

MJ: ... That, you had reason to believe that these people were empowered to hold you in custody and that, at Strassburg Kaserne, Idar-Oberstein, you freed yourself from the restraint of this custody before you'd been released from it by proper authority. Do you understand that?

ACC: Yes, sir.

MJ: And that's true in your case?

ACC: Yes, sir.

MJ: That in these two specifications that you resisted being taken into apprehension and after being taken into apprehension, you escaped from their custody?

ACC: Yes, sir.

* * * * * *

MJ: All right, Specialist Garcia, now I would like for you to tell me, in your own words taking your own time, what transpired on the day that these offenses arose.

ACC: You want my version of the case?

* * * * * *

MJ: Just tell me what happened.

ACC: It's true what it say[s] here. (pointing to a document on the counsel table)

MJ: I want you to tell me though, in your own words, exactly what happened on that day when this arose.

ACC: I be in my room and I hear somebody touch the door and they open the door and when they come in, I said, "come on in." They told me this is a search. I said, "okay, come on in." They came in, two people come in and I run outside and when I running outside, running by Bravo Battery, two people grabbed me. They apprehend me outside of the Kaserne and they found on me a knife and the pieces.

MJ: Okay. Counsellor, is there a stipulation of fact in this case?

TC: Yes, sir.

* * * * * *

MJ: All right, Specialist Garcia, now with regard to the period of time when the lieutenant and the two sergeants came into your room. At that time, did they direct you to stay in the room?

ACC: Yes, sir.

MJ: And you knew that you were supposed to stay there, is that correct?

ACC: Yes, sir.

MJ: You felt that your freedom of movement had been impaired, is that right? You were to stay there until told otherwise?

ACC: Yes, sir.

MJ: And instead, you ran, is that correct?

ACC: Yes, sir.

MJ: All right, you were running then and some guards and a sergeant were chasing you, is that correct?

ACC: Yes, sir.

MJ: And one of them caught you?

ACC: Yes, sir.

MJ: Was there a struggle at that time? Did you continue to try to get away from him?

ACC: Yes, sir.

MJ: How long did you struggle? Did he tackle you?

ACC: He jump on me and throw me out. He got me by the neck and the head.

MJ: But you continued to try to fight him off, is that correct?

ACC: Yes, sir.

MJ: Do you know who all was chasing you at that time?

ACC: Yes, sir.

MJ: Was Lieutenant Tinsley chasing you?

ACC: Yes, sir.

MJ: But one of the other people caught you first, is that right?

ACC: Yes, sir.

The stipulation referred to above states that upon entering the accused's room, Lieutenant "Tinsley informed SP4 Garcia of the search authorization and directed him to stay in the room; That 1LT Tinsley is a commissioned officer of the United States Army authorized to apprehend SP4 Garcia-Lopez."

The scene clearly presented is that the accused and his civilian defense counsel were striving mightily to plead guilty to secure the benefits of the pretrial agreement and the military judge was likewise striving to figure out what had happened. Piecing together as best we can, it appears that upon entering accused's room, Lieutenant Tinsley informed the accused of the purpose of their visit and that he was to remain in the room. Almost simultaneously, the accused walked to the door and ran away. Both Tinsley and Sergeant Walker yelled to him to stop, or words to that effect.

The general fact situation presented is similar to that in *United States v. Glaze,* 11 M.J. 176 (C.M.A.1981). There, the providence inquiry revealed that the accused was stopped at the gate of the post and asked to produce a pass. When he could not, he was told to accompany the military policeman to the police "box" so that authority for his off-base absence could be verified. Glaze walked a short way with them and then ran away. The military judge indicated that the accused might be guilty of escape from custody rather than resisting apprehension, as charged. The defense counsel argued that the two individuals had authority to apprehend Glaze for violating their order to go to the police box. We there held:

> [T]he disobedience of the order to halt when Glaze took flight is the misconduct which gave legitimacy to the apprehension.
>
> Law enforcement authorities can properly take reasonable measures to assure that, until reasonable investigative steps can be completed, evidence is not destroyed, crime scenes are not disarranged, and suspects do not flee. [Citations omitted.] In the military community, orders may be used for such purposes. Here, . . ., a military policeman, had a reasonable and *articulable* basis upon which to believe that accused was off post without authority. In these circumstances, he was entitled to detain the accused for the brief period incident to a telephonic check on his status. The order to halt was an appropriate—and lawful—means to accomplish this end. Violation of that lawful order authorized the ensuing apprehension.

11 M.J. at 177–78.

There is no question that Lieutenant Tinsley's order to the accused to stay in the room was a proper means to secure his presence for the purpose of the authorized search. The majority finds that this order was not enough to create the status of custody. Of course, if the circumstances surrounding the order reasonably indicated to the accused that he was in custody, specific verbalization would not be necessary. *United States v. Fleener,* 21 U.S.C.M.A. 174, 44 C.M.R. 228 (1972); *United States v. Ream,* 1 M.J. 759 (A.F.C.M.R.1975); *United States v. Byrd,* 45 C.M.R. 448 (A.F.C.M.R. 1972). There is no doubt that when the accused ran away, he terminated whatever status he was in, at least during the period of the flight. The real difficulty is in fitting the accused's own-word responses into the legal definition of custody. He agreed that the allegations of the specifications were correct, and later that he knew that he was supposed to stay in his room. On the other hand, his own abbreviated version of the case hardly establishes anything other than possession of the knife and the "pieces."

Recurrence of this tableau causes me to believe that we here create the problems.

The accused was represented at trial by an experienced civilian lawyer. Both he and his attorney acknowledged their understanding of and desire to participate in the pretrial agreement. Of course, trial counsel supported the pretrial agreement since it immeasurably simplified his task. The military judge did his best to bring some order to the providence inquiry. Thus, all the trial participants wanted the accused's pleas to be accepted. Now, on appeal, the accused seeks to retain the advantages of his plea bargain and also to have his sentence lightened, largely on the basis of his own abbreviated "version" of the events taken out of context. There is no question that under any "version" of the facts, the accused providently admitted to resisting apprehension by his flight from his room. *See* para. 174*a*, Manual for Courts-Martial, United States, 1969 (Revised edition). Whether this offense merges into the second specification of resisting apprehension which occurred at the conclusion of the chase is largely academic, since the military judge considered the two specifications under Article 95 to be multiplicious for sentencing purposes. If I may cite the words of the author judge here from his opinion in *United States v. Felty,* 12 M.J. 438, 441–42 (C.M.A.1982):

> If appellant had pleaded not guilty to escape from custody, the finding of guilty could not be sustained on the facts revealed by this record. [Citation omitted.] Does his plea of guilty here permit a different result? Pursuant to Article 45, we have not allowed a plea of guilty to stand when the accused's testimony was at odds with it. We note, however, that escape from custody and escape from confinement are both proscribed by ... Article 95—an Article which in its entirety consists of one short sentence.... There is no reason to believe that the variance impaired his ability to prepare for trial, and the finding of guilty, if affirmed, would protect him from prosecution on any other charge of escape arising out of the same course of conduct. [Citation omitted.]
>
> Looking through the spectacles of Article 59(a) ... which requires material prejudice to "substantial rights of the accused," we conclude that, under these circumstances, the plea was provident and appellant's answers were not "inconsistent" with his guilty plea within the purview of Article 45.... [I]n cases like this, the technical variance between the offense alleged and that which is established from an accused's own lips does not require setting aside the plea of guilty.

I cannot believe that the accused has been prejudiced by the acceptance of his plea of guilty here since his own statements are not inconsistent therewith, nor does he indicate any lack of understanding of the effect of the pleas nor exhibit any lack of conviction of his own guilt. He admitted at least one and possibly two counts of resisting apprehension, and the military judge treated the offenses as multiplicious for sentencing. Under the holding in *United States v. Felty, supra,* I see no requirement to set aside his plea.

Turning to section III of the majority opinion, which finds possession of hashish and wrongfully introducing hashish into a military unit and post for the purpose of use, transfer, and sale to be multiplicious for findings, I note that the military judge treated the two specifications as multiplicious for sentencing purposes, and the pretrial agreement severely limited the maximum punishment which could be imposed. Under these circumstances, I can find no prejudice to the accused which necessitates reversing the sentence and remanding the case. I would affirm the decision of the United States Army Court of Military Review.